Burhmaster v CRM Rental Mgt., Inc. (2018 NY Slip Op 07390)





Burhmaster v CRM Rental Mgt., Inc.


2018 NY Slip Op 07390


Decided on November 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 1, 2018

526162

[*1]TIMOTHY BURHMASTER, Respondent,
v
CRM RENTAL MANAGEMENT, INC., et al., Defendants, and MERCER CONSTRUCTION COMPANY LLC, Defendant and Third-Party Plaintiff- Respondent- Appellant; ROBERT YOUNG JR., Doing Business as YOUNG CONSTRUCTION CO., Third-Party Defendant- Appellant- Respondent, et al., Third-Party Defendant.

Calendar Date: September 7, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Devine, JJ.


Santacrose & Frary, Albany (Sean A. Tomko of counsel), for third-party defendant-appellant-respondent.
Goldberg Segalla LLP, Buffalo (William J. Greagan of counsel), for defendant and third-party plaintiff-respondent-appellant.
LaFave, Wein & Frament, PLLC, Guilderland (Paul H. Wein of counsel), for Timothy Buhrmaster, respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Cross appeal from an order of the Supreme Court (Catena, J.), entered March 30, 2017 in Montgomery County, which, among other things, granted plaintiff's motion for partial summary judgment.
Plaintiff, a roofer employed by third-party defendant David Jablonski Construction Corp., fell from the roof of a two-story building while he was performing emergency repairs on a windy day in January 2013. Jablonski Construction had been retained as a subcontractor of third-party defendant Robert Young Jr. to install new roofs on 18 apartment buildings owned by defendants Colonial Square Housing Development Fund Company, Inc. and Colonial Square of Amsterdam, LLC. (hereinafter collectively referred to as Colonial Square) and defendant CRM Rental Management, Inc. Young was a subcontractor of defendant Mercer Construction Company LLC, the general contractor.
Plaintiff commenced an action alleging negligence and Labor Law violations against Colonial Square, CRM and Mercer. Mercer commenced a third-party action against Young and Jablonski Construction seeking indemnification, among other things, and defendants and third-party defendants asserted various cross claims against one another for indemnification and other relief. Plaintiff moved for partial summary judgment as to liability pursuant to Labor Law § 240 (1). Defendants opposed plaintiff's motion, Mercer moved for summary judgment on its claim for conditional contractual indemnification against Young, and Young moved for summary judgment dismissing the third-party complaint. Supreme Court granted the motions by plaintiff and Mercer and denied Young's motion. Young appeals and Mercer cross-appeals.
Turning first to plaintiff's motion for partial summary judgment, Labor Law § 240 (1) imposes absolute liability upon owners and general contractors when the failure to provide a safety device to protect a worker from an elevation-related risk proximately caused the worker's injuries (see Salzer v Benderson Dev. Co., LLC, 130 AD3d 1226, 1227 [2015]; Miranda v Norstar Bldg. Corp., 79 AD3d 42, 46 [2010]). To prevail upon his motion, plaintiff was required to establish that such safety devices were not provided and that his injuries were proximately caused by this violation of the Labor Law (see Ortman v Logsdon, 121 AD3d 1388, 1389 [2014]; McGill v Qudsi, 91 AD3d 1241, 1242 [2012], lv dismissed 19 NY3d 1013 [2012]; Pearl v Sam Greco Constr., Inc., 31 AD3d 996, 997 [2006], lv denied 11 NY3d 710 [2008]). Plaintiff testified that his duties consisted of replacing plywood and rubber roofing on the apartment buildings' flat roofs, under the supervision of the site foreperson or Jablonski Construction's president, David Jablonski. He stated, and Jablonski confirmed, that no safety devices were in use to prevent workers from falling from the roofs [FN1]. Plaintiff testified that he and other workers began working on replacing a roof on the morning of the accident, but that, after several hours, the weather became so windy that they stopped working for the day and went to lunch. About half an hour later, plaintiff was called back to the apartment complex on an emergency basis to repair a roof that had not yet been replaced on a different building in the complex. Plaintiff, Jablonski and another employee went to the site and found that part of the building's original rubber roofing, about 20 feet long on each side, had blown loose and had "flopped over" or folded back on itself. The workers used a ladder to access the roof, moved the roofing back into place and attempted to secure it with nails. They then decided that more secure fastening materials were needed, and Jablonski left the job site to obtain them. Plaintiff and the other worker were waiting on the roof for his return when, according to plaintiff, a strong gust of wind pulled the roofing loose again, causing plaintiff to fall off the roof. As plaintiff put it, the wind "flopped [the roofing] back over and sent me flying." Plaintiff lost consciousness and awoke on the ground.
In response to this prima facie showing that plaintiff was entitled to judgment as a matter of law, defendants' submissions failed to establish the existence of a triable issue of fact (see generally Gallagher v New York Post, 14 NY3d 83, 88 [2010]). Although the other worker who was on the roof apparently did not see plaintiff's fall, the fact that an accident is unwitnessed [*2]does not bar summary judgment on a Labor Law § 240 (1) claim "where, as here, there are no bona fide issues of fact with respect to how it occurred" (Kirbis v LPCiminelli, Inc., 90 AD3d 1581, 1583 [2011] [internal quotation marks and citation omitted]; see Niles v Shue Roofing Co., 219 AD2d 785, 785 [1995]). Notably, not all aspects of the accident were completely unwitnessed; Jablonski testified that he found plaintiff on the ground with a nosebleed when he returned to the job site and that he saw an "imprint in the snow" where plaintiff's body had landed. In any event, defendants did not argue that plaintiff's injuries resulted from anything but falling from the roof and did not show that there were any pertinent inconsistencies in his accounts of the accident that require resolution by a jury [FN2]. While a defendant in an action pursuant to Labor Law § 240 (1) may "raise a factual issue by presenting evidence that [a safety] device furnished was adequate and properly placed and that the conduct of the [plaintiff] may be the sole proximate cause of his or her injuries," defendants here submitted no such evidence (Portes v New York State Thruway Auth., 112 AD3d 1049, 1050 [2013] [internal quotation marks and citation omitted], lv dismissed 22 NY3d 1167 [2014]; compare Briggs v Halterman, 267 AD2d 753, 753 [1999]). Nothing in defendants' submissions challenged the testimony of plaintiff and Jablonski that no safety devices were in place to prevent plaintiff's fall from the roof, nor did they submit any evidence that the accident was proximately caused by anything other than the absence of safety devices. Thus, their argument that the accident could not have happened in the way that plaintiff described and that he must have fallen in some other, unspecified manner was not only speculative but irrelevant. As "there is no view of the evidence to dispute or contradict a finding that the absence of safety equipment was a proximate cause of [plaintiff's] injuries," Supreme Court properly granted plaintiff's motion for partial summary judgment as to liability pursuant to Labor Law § 240 (1) (Salzer v Benderson Dev. Co., LLC, 130 AD3d at 1228-1229 [internal quotation marks and citations omitted]; see Nudi v Schmidt, 63 AD3d 1474, 1476-1477 [2009]; Dalaba v City of Schenectady, 61 AD3d 1151, 1152-1153 [2009]; Arey v M. Dunn, Inc., 29 AD3d 1137, 1138-1139 [2006]).
Turning to the indemnification issue, Young acknowledges that its contract requires it to indemnify Mercer for injury claims arising from the performance of the subcontracted roofing work to the extent that they may be shown to have been caused by negligent acts or omissions on the part of Young or by Jablonski Construction as Young's subcontractor. However, Young contends that Mercer is not entitled to conditional contractual indemnity here, because the repair work that led to the accident was outside the scope of the contract — which was limited to roof replacement and made no provision for repairs — and because no written change order modifying the scope of work was executed as the contract required. Contractual indemnification provisions are "strictly construed to avoid reading into [the provision] a duty which the parties did not intend to be assumed" (Trombley v Socha, 113 AD3d 921, 922 [2014] [internal quotation marks and citations omitted]). Thus, an indemnification provision may not apply to injuries caused by work that was performed outside of the contractual scope intended by the parties (see e.g. Lombardo v Tag Ct. Sq., LLC, 126 AD3d 949, 950-951 [2015]). Nevertheless, a contractual requirement for written modifications of the scope of work may be waived when "the conduct of the parties demonstrates an indisputable mutual departure from the written agreement and the changes were clearly requested by [the] plaintiff and executed by [the] defendant" (Austin v Barber, 227 AD2d 826, 828 [1996]; accord CGM Constr. v Miller, 263 AD2d 831, 832 [1999]). We find that the parties' conduct manifests such a waiver.
The undisputed testimony of Mercer's owner established that, despite the contractual requirement for written change orders, the parties in fact followed a flexible practice by which subcontractors sometimes performed repairs and other work not specified by the contract without [*3]submitting a written change order. The owner testified that change orders were required only when the subcontractor sought additional payment for such work, and that the decision whether to submit a change order was left to the subcontractor's discretion. Where, as here, the subcontractor did not submit a change order for a requested repair, Mercer's owner stated that he "would have to assume that [the work] was part of [the] contract."
Jablonski confirmed that he did not submit a change order for the repair work that led to plaintiff's injury and that Jablonski Construction did not receive additional payment for the work. He explained that Mercer's project manager was Jablonski Construction's "boss" on the project and that the project manager had directed him to "help the [apartment complex management staff] out" when possible and to provide assistance "anytime [the management staff] may call [him] on the roof or on the job." He stated that he received a request for assistance from a member of the management staff on the day of the accident and that he complied with the project manager's standing directive by directing plaintiff and the other worker to perform the emergency repairs that led to plaintiff's injury.
Mercer's owner confirmed that its project manager was responsible for scheduling and coordinating the work of the project's various subcontractors, including Jablonski Construction, stating that the project manager had been hired "to run [the project]" and that he selected the subcontractors and provided "oversight management" of their work. Young's testimony likewise established that he did not schedule or supervise Jablonski Construction's work and that he delegated all such responsibilities to Mercer's project manager. Plaintiff thus established on a prima facie basis that Jablonski Construction performed the roof repair work because it was directed by Mercer through its project manager to provide such assistance as part of its contracted work and, thus, that the parties' conduct manifested their mutual intent to depart from the contractual requirement for written modification of the scope of work (see CNP Mech., Inc. v Allied Bldrs., Inc., 84 AD3d 1748, 1749 [2011]; CGM Constr. v Miller, 263 AD2d at 832-833; Austin v Barber, 227 AD2d at 828). As Young submitted no evidence raising a triable issue of fact on these points, Supreme Court properly granted Mercer's motion for summary judgment on its claim for conditional contractual indemnification and denied Young's motion to dismiss the third-party complaint.
McCarthy, Egan Jr., Lynch and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Jablonski testified that the workers had previously used safety harnesses on the project but stopped doing so after they were informed by an inspector for the Occupational Safety and Health Administration that harnesses were not required. He further testified that no safety devices of any description were used during the emergency repair that led to plaintiff's injuries.

Footnote 2: Mercer asserts that plaintiff testified that he fell from the roof separately from the incident in which the wind blew the roofing loose and, further, submitted an expert affidavit to the effect that the wind was not strong enough to blow a person of plaintiff's size off the roof. However, we find that this argument relies upon a misreading of plaintiff's testimony, as it ignores his statement that the roof itself was lifted by the wind, thus propelling him to the ground. Further, as discussed above, the exact mechanism of his fall is not in issue given the undisputed absence of any safety devices.